UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROBIN W.,

            Plaintiff,

     v.

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,[1]

            Defendant.

Civil No. 1:20-cv-01146-MSN-IDD

## MEMORANDUM OPINION

This matter comes before the Court on the parties' cross-motions for summary judgment
(Dkt. Nos. 20, 24). This action arises from plaintiff Robin W.'s challenge to the Administrative
Law Judge ("ALJ") of the Social Security Administration's ("SSA") final decision denying a claim
for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). For
the reasons stated below, plaintiff's Motion for Summary Judgment is DENIED (Dkt. No 20),
defendant's Motion for Summary Judgment is GRANTED (Dkt. No. 24), and the ALJ's decision
is AFFIRMED.[2]

## BACKGROUND

On March 11, 2017, plaintiff filed a claim for disability insurance benefits under sections

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant
to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C § 405(g) (action survives
regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).
(Dkt. No. 12). In accordance with those rules, this order excludes any personal identifiers such as plaintiff's full name,
social security number and date of birth (except for the year of birth), and the discussion of plaintiff's medical
information is limited to the extent necessary to analyze the case.

216(i) and 223(d) of the Social Security Act alleging disability as of January 8, 2015. AR at 189. SSA found that plaintiff was not disabled at any time from January 8, 2015, the alleged onset date, through March 31, 2017, the date last insured (together, hereinafter referred to as the "relevant period"). *Id.* at 20. After her claim was denied at the initial level and upon reconsideration, plaintiff appeared before ALJ Richard Furcolo for a hearing on September 24, 2019 to challenge the SSA's disability determination. *Id.* at 10. Plaintiff, represented by an attorney, testified at that hearing, as did a Vocational Expert ("VE"). *Id.* On October 15, 2019, the ALJ issued a decision finding that plaintiff suffered from a spine disorder and chronic kidney disease but was not disabled under the Act. *Id.* at 13, 20. The Appeals Council found no basis to review and affirmed the ALJ's decision. *Id.* at 1.

Having exhausted her administrative remedies, plaintiff filed a Complaint with this Court on September 30, 2020, challenging the ALJ's decision. (Dkt. No. 1). Plaintiff filed a Motion for Summary Judgment (Dkt. No. 20) on June 6, 2021, including a Memorandum in Support of Plaintiff's Motion for Summary Judgment (Dkt. No. 21). Defendant filed a Cross-Motion for Summary Judgment (Dkt. No. 24) on July 6, 2021, along with a Memorandum in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 25). Plaintiff filed her Reply to Defendant's Motion for Summary Judgment on July 29, 2021 (Dkt. No. 28). Accordingly, the parties' motions are ripe for disposition.

## I. Evidence before the ALJ

Below is a summary of plaintiff's relevant testimony before the ALJ and other medical evidence of plaintiff's impairments.

### A. Testimony at the Administrative Hearing

At the hearing on September 24, 2019, plaintiff, represented by an attorney, appeared before the ALJ. AR at 48. Plaintiff testified that she was approximately sixty-three years old. AR at 53. From 2011 through 2015, plaintiff worked for Intercessors for America as an administrative assistant where she managed mailings, performed bookkeeping, and generated reports, among other things. *Id.* at 53–54. Plaintiff's disability onset date, January 8, 2015, was the last day plaintiff worked at Intercessors for America. *Id.* at 65.

Plaintiff then explained that she had three spinal surgeries prior to the hearing date. *Id.* at 58. In January 2015, plaintiff underwent her third spinal surgery to correct for scoliosis. *Id.* at 64–65. Plaintiff testified that, as a result of her spine disorders, she had lost significant mobility. *Id.* at 65. For example, plaintiff claimed she could not touch her feet, could only sit or stand for 20 to 30 minutes at a time, could lift or carry no more than about 10 pounds, and had to use a cane all the time to steady herself. *Id.* at 65–66, 69–70. Additionally, she claimed that her excessive use of Excedrin and Advil to manage her pain had led to stage three kidney disease, *id.* at 68, and that her chronic pain from the spinal disorder had caused her to experience depression. *Id.* at 70.

The VE then testified. It was established that plaintiff's prior work was a semiskilled position that required light exertional work. *Id.* at 72. The ALJ then described the following hypothetical person for the VE to consider: The hypothetical person was about fifty-nine years old, with a high school diploma and four years of college. *Id.* at 73. The work experience was similar to plaintiff's and the hypothetical individual could perform work at a light exertion level. *Id.* In this hypothetical, the individual could frequently climb stairs and balance, kneel, crawl, and occasionally climb ladders and stoop. *Id.*

The VE testified that the plaintiff's work at the ministry as generally performed would be fit for the hypothetical person presented. *Id.* at 73. The ALJ then modified the limitations placed

on the hypothetical person, such that the individual could never climb stairs. The VE again found the hypothetical person could perform administrative work as generally performed. *Id.* Lastly, the ALJ asked the VE to assume the same facts as the second hypothetical situation, except that the individual would need to sit or stand every 30 minutes at will. *Id.* at 74. Again, the VE found that the administrative assistant work could be performed under those facts, but that the individual could not be off task more than 10 percent in an eight-hour work period and absent from work less than once per month. *Id.* at 73, 75.

**B. Record Evidence**

Below is a summary of the relevant[3] medical evidence documenting plaintiff's history of seeking treatment for her impairments during the relevant period and after:

**i. Plaintiff's Physical Impairments**

On January 26 and 27, 2015, Plaintiff underwent spinal surgery for her scoliosis. *Id.* at 283–89. Plaintiff subsequently received physical and occupational therapy for rehabilitation from January 31, 2015 through February 9, 2015. *Id.* at 369, 519. In the weeks following her surgery, plaintiff used a "front wheeled walker" to maneuver around obstacles or in small places. *Id.* at 519. No records indicate the walker was prescribed by a physician or that plaintiff continued using a walking assist after rehabilitation.

On July 6, 2016, plaintiff visited Annette M. Hudler, DO, to discuss plaintiff's recent kidney function results and pain medication. *Id.* at 825. Ms. Hudler observed that plaintiff had normal movement of all extremities. *Id.* at 826. She also observed that plaintiff's mood was anxious and that her thought processes were not impaired. *Id.*

---

[3] Plaintiff's arguments turn on her mental health history and ability to ambulate. Therefore, the summary of plaintiff's medical history omits discussion of plaintiff's kidney disease and gynecological issues.

On February 16, 2017,[4] plaintiff visited Dr. Virgil Balint, M.D. of the National Spine and Pain Center. *Id.* at 660. Plaintiff reported experiencing poor balance, sleep disturbance, depression, and anxiety. *Id.* at 661. However, Dr. Balint's exam revealed "normal standing balance, normal gait, normal posture [and] no lumbar shift." *Id.* As a result, Dr. Balint prescribed medication and urged plaintiff to contact him if the leg pain returned. *Id.* at 662. No cane or other assistive device was prescribed at this time.

Medical records from after the relevant period also reflect that plaintiff's movement was largely normal and did not require the use of a cane. *See id.* at 639 (December 2017), 653 (May 2017). For example, Plaintiff submitted records from her visit to Ms. Deborah Nelson PA-C, dated April 4, 2018, for plaintiff's "chronic pain in the back and lower extremity." *Id.* at 625. Ms. Nelson noted that plaintiff had normal posture and gait, and plaintiff's range of motion had "restricted flexion [and] restricted extension" in her lumbar. *Id.* at 626. The treatment plan noted that plaintiff is "more active now with gardening . . . and may want to consider using a back brace." *Id.* at 627. Ms. Nelson examined plaintiff again on August 30, 2018, expressly noting that plaintiff did not require the use of a cane when standing or walking. *Id.* at 731.

### ii.    Plaintiff's Mental Health Treatment

On June 9, 2016, plaintiff received an Initial Psychiatric Evaluation by Dr. Tara Mangat, M.D. *Id.* at 596. The Assessment notes that plaintiff had a long history of bipolar disorder and plaintiff reported low energy, difficulties with concentration, and social anxiety, but her motivation, sense of hopelessness, and self-esteem were otherwise normal. *Id.* at 596–97. Plaintiff

---

[4] The medical record includes earlier documentation from the relevant period, but the ALJ and this Court found many difficult to read. For example, Plaintiff included medical records from Hiral Jobanputra, NP's treatment of plaintiff from 2014 through 2018, but the documents are largely illegible and could not be relied upon by this Court. AR at 665–724; *see also id.* at 19 (ALJ finding "most of the written explanation accompanying [Dr. Balraj Dhillon's] opinion cannot be interpreted").

was well-groomed, her speech was clear, and her thought processes were logical. *Id.* at 598. Additionally, plaintiff's judgment, insight, and ability to abstract were noted as fair. *Id.* Dr. Mangat rated plaintiff's depression as moderately severe at that time. *Id.* at 600. In light of her assessment, Dr. Mangat prescribed Topamax, Cymbalta and Wellbutrin to treat plaintiff's depression, anxiety, moderate insomnia, and mood swings. *Id.* at 599.

On June 28, 2016, plaintiff reported she was compliant with her medication and "doing better." *Id.* at 607. At plaintiff's next appointment with Dr. Mangat on August 11, 2016, plaintiff reported "doing well." *Id.* at 606. Plaintiff further reported she was having a good response to her medications with respect to her bipolar disorder. *Id.* The medical records from this visit state plaintiff's mood was normal, her memory was intact, her thoughtfulness was clear, and her cognition was alert and normal. *Id.* Medical records from plaintiff' visit on September 23, 2016 report plaintiff's mood, memory, thoughtfulness, and cognition were unchanged. *Id.* at 608.

On December 30, 2016, Dr. Mangat reported that plaintiff was "doing well" and that she was "relatively stable [with] her med[ication]." *Id.* at 613. At plaintiff's visit with Dr. Mangat on March 27, 2017, her last visit during the relevant period, medical records indicate plaintiff's mood was normal, her memory intact, her thoughtfulness clear, and her cognition as alert and normal. *Id.* at 614. Dr. Mangat continued to see plaintiff about every three to four months until April 24, 2018. *See id.* at 615–18.

On May 4, 2018, Ms. Nelson reported that plaintiff appeared "alert and cooperative; [had] normal mood and affect; [and a] normal attention span and concentration." *Id.* at 627.

On August 27, 2018, plaintiff was evaluated by Dr. Balraj Dhillon, M.D. *Id.* at 725. Dr. Dhillon found plaintiff had no ability to function independently, or maintain attention or concentration. *Id.* Additionally, Dr. Dhillon found plaintiff lacked the ability to understand,

remember, and carry out detailed, but not complex job instructions. *Id.* at 726.

**C. Disability Evaluation Process**

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

The ALJ engages in a five-step evaluation process to determine whether an applicant is eligible for disability. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). At step one, the claim is denied if the claimant is engaged in substantial gainful activity, *i.e.*, is employed. At step two, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that significantly limits her from performing basic work activities. AR at 11. If the ALJ determines the claimant has a severe impairment or combination of impairments, the analysis proceeds to step three, where the ALJ must determine whether the claimant's impairment or combination of impairments meets the criteria for symptoms and duration on the List of Impairments maintained by the SSA. If the claimant does not meet both requirements, the ALJ must determine the claimants residual function capacity ("RFC")—the claimant's ability to perform work despite limitations from her impairments. The ALJ "must consider all of the claimant's impairments, including impairments that are not severe." *Id.* at 12. In step four, the ALJ must determine whether the claimant has the RFC to perform past relevant work performed in the last 15 years or "15 years prior to the date that disability must be

established." *Id.* If the claimant is unable to do any past relevant work, the analysis proceeds to step five where the ALJ determines if the claimant can perform any other work. AR at 11–12. "A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry." *Coffey v. Colvin*, No. 1:09-cv-830, 2013 WL 6410383, at *2 (M.D.N.C. Dec. 9, 2013).

### D. The ALJ's Decision

On October 15, 2019, the ALJ issued a decision finding plaintiff not disabled from January 8, 2015 through her date last insured on March 31, 2017 and denying her application for benefits. AR at 20. Under the first step of his five-part inquiry, the ALJ found that plaintiff was not engaged in any substantial gainful activity. *Id.* at 12.

At step two, the ALJ found that plaintiff had the following severe impairments: spine disorder and chronic kidney disease. *Id.* at 13. The ALJ also found plaintiff had the following non-severe impairments: obesity, depressive disorder, and anxiety disorder. *Id.*

Under step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the SSA's List of Impairments. *Id.* at 14–15. The ALJ considered listings 1.04A (nerve root compression), 1.04B (spinal arachnoiditis), 1.04C (lumbar spinal stenosis), 6.05 (chronic kidney disease), 6.06 (nephrotic syndrome), 6.09 (chronic kidney disease), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders) but found that plaintiff satisfied none. *Id.*

The ALJ also found that plaintiff's impairments did not satisfy the "paragraph B" criteria—that is, the ALJ found that plaintiff's mental impairments did not result in an extreme limitation in any of the four areas of mental functioning (the ability to: understand, remember, or apply

8

information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself). *Id.* at 15. Instead, the ALJ found that plaintiff had no more than mild limitations in all four areas of mental functioning. *Id*. The ALJ also found that the record did not establish that plaintiff had "a minimal capacity to adapt to changes in her environment or to demands that were not already part of her daily life" and therefore, did not satisfy the "paragraph C" criteria. *Id*.

Before proceeding to step four, the ALJ determined plaintiff's RFC. In doing so, the ALJ considered all reported symptoms and the extent to which those were reasonably consistent with objective medical evidence and opinion evidence. *Id.* at 15–19. The ALJ applied a two-step process, considering first whether plaintiff's underlying impairments would be reasonably expected to produce plaintiff's symptoms, and second whether those impairments limited plaintiff's functioning. *Id.* The ALJ determined that, while plaintiff's impairments could be reasonably expected to cause plaintiff's symptoms, plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the objective medical evidence and other evidence" in the record. *Id.* at 16.

The ALJ concluded that plaintiff had the RFC to perform light work but could not "frequently climb stairs, balance, kneel, crouch, [or] crawl" and that she could only "occasionally climb ladders and stoop." *Id.* at 15. In support, the ALJ provided an overview of plaintiff's physical health treatment, followed by her mental health treatment. *Id.* at 22–23. The ALJ at this point focused specifically on plaintiff's physical examination showing "normal manual muscle testing and normal gait and standing balance," as well as plaintiff's mental status examination revealing plaintiff's mental health "remained largely normal through the date last insured." *Id.* at 17–18. The ALJ found these medical opinions, coupled with objective evidence, failed "to establish that the claimant had any significant restrictions that would have prevented her from performing work

9

consistent with the above residual functional capacity, despite her subjective complaints." *Id.* at 19.

As for those parameters, the ALJ explained that plaintiff's back disorder and the effects of kidney disease limited claimant to light work with postural limitations. *Id.* at 17. Specifically, the ALJ noted that "[w]eakness was present in the weeks after the surgery but subsequent physical examinations were largely normal through the date last insured." *Id.* at 18. The claimant had "lumbar spasm and abnormal lumbar spine range of motion" but these physical limitations were otherwise "unremarkable" for the majority of the time prior to the date last insured. *Id.*

The ALJ further explained that "great weight" was given to the State agency psychological consultants' opinions that the claimant had "mild or no [mental health] limitation." *Id.* Specifically, the ALJ stated that the claimant's mood was normal except for "mood, affect, and attitude abnormalities," but that her symptoms improved upon seeing a psychiatrist and receiving medication. *Id.*

In reaching these conclusions, the ALJ gave no doctor's opinion controlling weight. The ALJ gave the most weight to the State agency consultants' opinions, assigning "great weight" to them. *Id.* at 18. The ALJ also considered the other opinions in the record. The ALJ found the June 2018 opinion of Hiral Jobanputra, NP as "not consistent with the medical evidence." *Id.* The August 2018 opinion of Deborah Nelson PA-C was given "no weight regarding the relevant period at issue" because "Ms. Nelson is not an acceptable medical source and her opinion is not consistent with the medical evidence of record." *Id.* at 18–19. Lastly, the ALJ gave the August 2018 opinion of Balraj Dhillon, M.D. "no weight for the relevant period at issue" because "[t]he opinion is inconsistent with the totality of readable medical evidence in the file" and "Dr. Dhillon did not begin treating the claimant until after the date last insured." *Id.* at 19.

10

Under step four, the ALJ found "the claimant was capable of performing past relevant work as an administrative clerk" that "did not require the performance of work-related activities precluded by the claimant's" RFC. *Id.* The ALJ relied on the testimony of a vocational expert who stated that the claimant could perform the "past relevant work as an administrative clerk as generally performed." *Id.* at 20. The ALJ did not reach step five of the analysis, instead finding plaintiff was able to perform her past work and "was not under a disability . . . at any time from January 8, 2015, the alleged onset date, through March 31, 2017, the date last insured." *Id.*

### E. Appeals Council Review

The Appeals Council denied plaintiff's request for review, finding no basis for review, and held the ALJ's decision to be the final decision of the Commissioner of Social Security. *Id.* at 1.

## STANDARD OF REVIEW

When a social security claimant appeals a final decision of the SSA, the district court's review is limited to determining whether there is substantial evidence in the administrative record to support the agency's findings or whether the ALJ made an error in law. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 589 (4th Cir. 1966). When evaluating whether the Commissioner's decision is supported by substantial evidence, "it is not within the province of a reviewing court to determine the weight of the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1996). The Court must affirm the agency's decision if it is supported by substantial evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th

Cir. 1996). When evaluating whether the ALJ committed an error in the law, the Fourth Circuit applies a harmless error analysis. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). A reviewing court must make "[a]n estimation of the likelihood that the result would have been different," *Morton-Thompson v. Colvin*, No. 3:14-cv-179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)), and affirm an ALJ's decision when, on the basis of the ALJ's entire opinion, the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-cv-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016).

## ANALYSIS

Plaintiff moves for summary judgment based on three alleged errors with the ALJ's opinion: (1) the ALJ "fail[ed] to assign weight to the medial opinions tendered by plaintiff's treating physicians, in violation of 20 C.F.R. § 404.1527(c);" (2) the ALJ failed to provide substantial evidence to support its conclusions in steps two and four that plaintiff's mental disorder was "nonsevere"; and (3) the ALJ failed to provide substantial evidence in finding that plaintiff did not medically require the use of a cane. Pl. Br. (Dkt. No. 21) at 4. Defendant responds in opposition that the ALJ fully evaluated the evidence on the record and explained the basis for his conclusion in a well-articulated decision. Def. Br. (Dkt. No. 25) at 17–30.

The question before the court, therefore, is to determine whether the ALJ's opinion was supported by "substantial evidence," and whether the ALJ's exclusion of medical evidence was harmless error. For the reasons that follow, the Court denies plaintiff's Motion for Summary Judgment, grants defendant's Motion for Summary Judgment, and affirms the ALJ's decision.

### A. The ALJ Appropriately Weighed All Medical Opinions

When determining a claimant's Social Security disability status, the ALJ is required to consider and weigh the medical opinions of all physicians on the record. *See* 20 C.F.R. §

404.1527(b). If the medical opinion is of the claimant's "treating physician," the opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[5] If the opinion is not entitled to controlling weight, the ALJ must consider six factors in determining how to weigh the opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is opining as to "issues related to his or her area of specialty"; and (6) any other factors "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)(i)–(6). The ALJ is not required to detail every factor in his or her decision; however, the record must reflect that the ALJ *considered* each factor in determining how much weight to give an opinion. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021) (finding the ALJ's decision was "bereft of any reference to the factors as a whole," and that "[t]he ALJ never so much as hinted that his discretion was checked by the factors" in the regulation).

Plaintiff asserts the ALJ erred in assigning no weight to the opinions of Ms. Deborah Nelson, PA-C, and Dr. Balraj Dhillon, M.D. and argues that the opinions should have been at least considered. AR 4–13. Specifically, plaintiff argues the ALJ "failed to give clearly articulated and good cause reasons for assigning Ms. Nelson's opinion no weight" given she had a "lengthy relationship" with plaintiff and that she can "present relevant evidence as to an opinion about the

---

[5] This standard and the related regulations apply to claims for disability filed before March 27, 2017. The SSA has promulgated different rules for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because plaintiff filed for disability on March 11, 2017, her claims are not subject to the new rules.

claimant's impairment or ability to work." Pl. Br. at 5–7. Regarding Dr. Dhillon, plaintiff argues the ALJ's opinion failed to consider statutorily required factors in determining to assign the opinion of plaintiff's "long-time treating psychiatrist" no weight. Pl. Br. at 9.

*First*, the ALJ did not err in assigning no weight to Ms. Nelson's opinion. A medical opinion rendered after the date last insured is generally given no weight. *See Ward v. Astrue*, No. 3:12-cv-199, 2012 WL 5387679, at *25 (E.D. Va. Oct. 16, 2021) (adopted report and recommendation assigning no weight to medical evidence rendered after the date last insured).

Plaintiff contends that Ms. Nelson, as a physician's assistant and long-time care provider to plaintiff, was an acceptable medical source whose opinion should have been "at least considered by the ALJ." Pl. Br. at 5. In support, plaintiff quotes *Foster v. Astrue*, where the court found the ALJ erred in affording little weight to the opinion of claimant's licensed clinical social worker who had treated the claimant consistently over a number of years. 826 F. Supp 2d 884, 886 (E.D.N.C. 2011). Defendant responds that plaintiff ignored the temporal aspect of when the opinions were generated and failed to explain how the opinions, created after the relevant period, could be germane to her disability determination. Def. Br. at 25.

Here, although Ms. Nelson is a licensed physician's assistant who treated plaintiff for approximately three years by the hearing date, Pl. Br. at 6, Ms. Nelson did not begin treating plaintiff until August 30, 2018, well after plaintiff's date last insured. AR at 732. A non-medical opinion will be considered by the ALJ when "there is evidence in the record to suggest that a non-acceptable medical source had a lengthy relationship with the claimant and can present *relevant* evidence as to an opinion about the claimant's impairment or ability to work." *Foster*, 826 F. Supp 2d at 886 (emphasis added). In evaluating Ms. Nelson's August 2018 report, the ALJ found that "Ms. Nelson did not indicate that her opinion applie[d] at any time through the date last insured."

14

AR at 19. Thus, the ALJ had legal and factual support to conclude Ms. Nelson did not offer any *relevant* evidence on plaintiff's condition.

*Second*, the ALJ's decision to assign no weight to Dr. Dhillon's decision was supported by substantial evidence on the record and adequately explained. Plaintiff contends that "the ALJ was completely silent as to the remining 20 C.F.R. § 404.1527(c) factors of length of treating relationship, frequency of examination, nature and extent of treating relationship, and supportability." Pl. Br. at 10. In response, defendant argues that the ALJ expressly considered those factors "by noting that Plaintiff and Dr. Dhillon had *no relationship* prior to the date last insured." Def. Br. at 28.

This Court agrees with defendant. The ALJ is not required to articulate a detailed explanation for each of the six factors enumerated in 20 C.F.R. § 404.1527(c). *See Dowling*, 986 F.3d at 385. Plaintiff's claim for disability was limited to January 8, 2015 through March 31, 2017. In reviewing Dr. Dhillon's August 2018 report the ALJ stated, "[t]he medical record shows that Dr. Dhillon did not begin treating the claimant until after the date last insured." AR at 19. The ALJ continued, "[t]he opinion is inconsistent with the totality of readable medical evidence in the file and most of the written explanation accompanying the opinion cannot be interpreted." *Id.* It is clear from the record that the ALJ evaluated Dr. Dhillon's opinion in light of the length of his treating relationship with plaintiff, the frequency of examination, the nature and extent of treating relationship, and the supportability of Dr. Dhillon's opinion during the relevant period and appropriately found none.

### B. The ALJ's Explanation of Plaintiff's Impairments

Plaintiff contends that the ALJ's determination that plaintiff did not have any "severe" mental impairments under step two was unsupported by substantial evidence because the ALJ

failed to consider multiple psychiatric examinations that demonstrate plaintiff suffered from "a long history of depressive disorder and anxiety." Pl. Br. at 23. Further, plaintiff argues this error was not harmless because the ALJ consequently failed "to include any mental and/or non-exertional restrictions caused by [plaintiff's] depression and anxiety disorder in the RFC at steps four and five." Pl. Br. at 24.

Defendant responds that the ALJ properly applied the "special technique" to determine plaintiff's mental impairments and supported his finding of "non-severe" mental limitations with substantial evidence from the relevant time period. For the reasons that follow, the Court agrees with defendant.

### i.   20 C.F.R. § 404.1520a

At step two, an ALJ must determine whether a claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1522. An impairment or combination of impairments are severe if it significantly limits an individuals' ability to perform basic work activities. *Id.* A claimant must provide medical evidence that the impairment significantly limited her ability to work during the time the claimant alleges she was disabled. 20 C.F.R. § 404.1512c. The evidence to support a claim of severe medical impairment must show more than the mere presence of a condition and must be from acceptable medical sources such as licensed physicians or psychologists. 20 C.F.R. § 404.1513(a); *Coffey*, 2013 WL 6410383, at *4–5 ("A claimant's statements regarding the severity of an impairment is not sufficient").

When evaluating the severity of mental impairments, the ALJ utilizes a "special technique" detailed in 20 C.F.R. § 404.1520a. The ALJ must assess four broad functional areas—the claimant's ability to "understand, remember, or apply information; interact with others;

16

concentrate, persist, or maintain pace; and adapt or manage oneself"—and rate the claimant's functional impairment as being none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(3)–(4). If the ALJ determines the claimant's functional impairment is "none" or "mild," the ALJ "will generally conclude that [the] impairment[] is not severe." 20 C.F.R. § 404.1520a(d). The ALJ must detail its findings in a written decision "show[ing] the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(4).

### ii.    The ALJ's Step-Two Determination

The ALJ found, "[t]hrough the date last insured, mental status examinations were largely normal except for mood, affect, and attitude abnormalities." AR at 13. Further, the ALJ concluded, "[a]dditional findings were present when the claimant began seeing a psychiatrist in June 2016 but the claimant's mental status examination was improved later that month and remained largely normal through the date last insured." *Id.* In reaching this conclusion, the ALJ considered plaintiff's "long and well-controlled diagnosis of bipolar disorder" and depression that was improved once she restarted Cymbalta in June 2015. *Id.* at 14. The ALJ also reviewed plaintiff's medical records from Tara Mangat, M.D., plaintiff's psychiatrist, noting that when claimant began treatment with Dr. Mangat in June 2016, plaintiff was depressed, anxious, irritable, had a constricted affect, withdrawn behavior, decreased memory, and decreased attention and concentration. *Id.* Plaintiff's symptoms improved with prescription medication, and plaintiff "consistently reported doing well and Dr. Mangat's mental status examinations were consistently normal." *Id.* This evidence led the ALJ to conclude that plaintiff's mental impairments were no

more than "mild" in any of the functional areas. *Id.*

### iii.   The Merits of Plaintiff's Position

Plaintiff argues that the ALJ erred in finding her "more than trivial" mental impairment as non-severe by failing to consider medical evidence demonstrating plaintiff had major depressive disorder and anxiety disorder. Pl. Br. at 21–25 In this regard, plaintiff points out that the Initial Psychiatric Evaluation conducted by Dr. Mangat on June 9, 2016 noted plaintiff reported feeling decreased concentration, social anxiety, and low motivation, among other symptoms, and Dr. Mangat observed that plaintiff "was depressed, anxious, irritable, withdrawn, with decreased memory and concentration." *Id.*; *see also* AR at 14, 596–98. Plaintiff also points to a mental status examination on November 21, 2017 that found plaintiff was anxious and her insight/judgment and concentration was "fair." Pl. Br. at 23; AR at 616. Largely, however, plaintiff relied on examinations by Dr. Mangat and Dr. Dhillon that occurred after the relevant period to demonstrate her "severe" impairment. *Id.* at 23–24.

Although plaintiff's condition may have deteriorated after the relevant period, the record indicates the ALJ did not err in finding plaintiff's mental impairment was non-severe. The ALJ considered plaintiff's "significant history [from January 2015 through March 31, 2017], including examination and laboratory findings." 20 C.F.R. § 404.1520a(e)(4). As detailed in the ALJ's decision, plaintiff initially presented signs of depression, anxiety, decreased memory, attention and concentration difficulties, and other symptoms in her assessment with Dr. Mangat in June 2016. AR at 14. As a result, Dr. Mangat prescribed Cymbalta, Topamax, and Wellbutrin. *Id.* By August 2016, plaintiff reported "doing well" and her cognition, memory, mood, and affect was improved. AR at 606. As demonstrated by the medical evidence, the ALJ found that claimant "consistently reported doing well and Dr. Mangat's mental status examinations were consistently normal." It is

clear that the ALJ's finding regarding plaintiff's mild mental impairment is supported by substantial evidence on the record.

Furthermore, any error on the ALJ's part to find plaintiff had a severe mental limitation would not be grounds for remand. "Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error." *Coffey*, 2013 WL 6410383, at *6. Accordingly, the Court will not remand on the basis that the ALJ failed to find plaintiff's mental impairments were severe at step two, given the ALJ already concluded plaintiff had a severe spine disorder and chronic kidney disease.

### iv.     The RFC is sufficient.

Plaintiff further asserts that the ALJ's RFC assessment was deficient because it failed to consider plaintiff's non-severe mental limitations. Plaintiff argues that the ALJ "never addressed and never discussed [the degree of mental limitations found] in the RFC itself," Pl. Reply Br. (Dkt. No. 28) at 5, and therefore, failed to make a detailed assessment that considered the combined cumulative effect of plaintiff's limitations. *Id.* at 6. In support, Plaintiff argues *Mascio v. Colvin* requires that the ALJ "discuss and make findings regarding whether [p]laintiff's physical and/or mental impairments allow her to perform the work-related functions indicated in the RFC for a *full workday* and *full workweek*" taking plaintiff's mental limitations into consideration. Pl. Reply Br. at 8.

Before proceeding to step four of the disability analysis, the ALJ must determine a claimant's RFC. The RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." AR at 12. In determining an RFC, the ALJ is required to consider all "medically determinable impairments of which" they are aware,

including "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). The RFC is based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.154(a)(3). The Fourth Circuit has held that an ALJ is not required to base an RFC assessment on a specific medical opinion, but may consider the record as a whole, including subjective complaints, objective medical evidence, and medical source opinion. *See Felton-Miller v. Astrue*, 459 Fed. App'x 226, 230–31 (4th Cir. 2011).

To assist this Court in conducting its review of an RFC assessment, the ALJ must provide a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activity observations);" however, the ALJ's discussion requires only so much detail as to allow a reviewing court to understand how the ALJ reached its conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *see Mascio*, 780 F.3d at 636; *Lee v. Berryhill*, No. 2:18-cv-214, 2019 WL 3559473, at *11 (E.D. Va. June 19, 2019). "In other words, a sufficient residual functional capacity analysis must include: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Jeffrey R.T. v. Saul*, No. 3:19-cv-752, 2021 WL 1014048, at *15 (E.D. Va. Feb. 25, 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019)).

Here, the ALJ properly considered and explained the relevant evidence of mental and physical limitations when formulating plaintiff's RFC. As to plaintiff's depression and anxiety, the ALJ found it was non-severe, controlled with medication, and imposed mild limitations on plaintiff, at most. AR at 13–14. The ALJ's opinion cited directly to the medical records of plaintiff's treating psychiatrist and reached the same conclusion as the State agency psychological consultant. *Id.* at 18. This explanation satisfies the requirements of *Mascio*, and plaintiff has identified no other evidence of mental limitations in the record which the ALJ failed to address.

### C.  Plaintiff's Use of a Cane

Lastly, plaintiff contends the ALJ erred in failing to consider her use of a cane in determining the RFC. Specifically, plaintiff argues the ALJ omitted the use of a cane from the RFC and in his hypothetical questions to the vocational expert. Pl. Br. at 14.

#### i.    RFC Standard

As discussed *supra*, § B.iv, the ALJ's RFC assessment must consider all available evidence on the record and provide an explanation for its ultimate conclusion. When formulating the RFC assessment, the "medically required" use of a cane may impact the claimant's ability to move about and must be considered. *McLaughlin v. Colvin*, No. 1:12-cv-621, 2014 WL 12573323, at *2 (M.D.N.C. July 25, 2014). The burden is on the claimant to demonstrate that the cane is medically necessary. *Candi L. v. Comm'r of Soc. Sec.*, No. 4:17-cv-30, 2018 WL 7690318, at *1 (W.D. Va. July 31, 2018). The claimant is not required to show a prescription for the cane but must present medical documentation establishing the cane is "to aid in walking or standing and describing circumstances for which it is needed." *Candi L.*, 2018 WL 7690318, at *8; *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009).

#### ii.   The ALJ's RFC Assessment

The ALJ's RFC assessment thoroughly discussed the ALJ's independent review of the medical evidence with respect to the cane, and the State agency medical consultants' opinions regarding plaintiff's physical examinations and range of motion.

> Examinations revealed weakness and use of a cane in the weeks following her January 2015 surgery but subsequent physical examinations showed normal manual muscle testing and normal gait and standing balance. The claimant had lumbar spasm and abnormal spine range of motion but her physical examinations were otherwise unremarkable after her discharge from rehabilitation. No sensory abnormalities were present. The claimant's treatment records show that she reported improvement of her symptoms with medication and injections . . . . [The State agency medical consultants' opinions found] [w]eakness was present in the

21

> weeks after surgery but subsequent physical examinations were largely normal except for lumbar spasm and abnormal lumbar spine range of motion.

AR at 18. The ALJ ultimately found that plaintiff did not have any significant restrictions that would have prevented her from performing light work, including the "use of a cane," despite plaintiff's subjective complaints. *Id.* at 19

### iii.    The Merits of Plaintiff's Position

Plaintiff's claim that the ALJ erred in failing to explicitly address in the RFC assessment whether a cane was medically necessary for balancing is not supported by the record. In support of her contention, plaintiff points to instances in the record of self-reported issues walking and balancing. *See id.* at 17 (citing "gait difficulties" and "frequent falls"). The only medical opinions plaintiff points to, however, are statements by Dr. Balint made after the relevant period that plaintiff "had increasing symptoms in the back and lower extremities." *Id.* at 17–18.

As discussed *supra*, medical evidence following plaintiff's last date insured is not relevant to the ALJ's analysis. *See* § A. Even so, the standard for finding a cane medically necessary "requires more than generalized evidence of a condition that might require the use of a cane. It requires medical documentation *establishing the need* for a hand-held assistive device." *Staples v. Astrue*, 329 F. App'x 189, 192 (10th Cir. 2009) (internal quotations omitted) (finding medical opinion that claimant's left leg pain may be due to permanent nerve damage insufficient to establish the medical necessity for a cane).

The ALJ correctly noted in its opinion that plaintiff required a cane in January 2015 around the time of her surgery and in the weeks following her surgery. *Id.* at 18. The ALJ then went on to examine medical records that might indicate plaintiff's need for a cane, but found that following her discharge from rehabilitation, plaintiff's physical examinations

were largely normal. *Id.*

No medical records following plaintiff's discharge from rehabilitation in February 2015 mention the use of a cane or ambulatory device, nor does plaintiff point to any specific piece of medical evidence not considered by the ALJ showing a need for a cane for balancing. Pl. Br. at 16–20. As such, the ALJ's determination that plaintiff did not medically require a cane was supported by substantial evidence in the record, and the ALJ did not err in failing to present the need for a cane for balance in the hypothetical posed to the vocational expert.

\*       \*       \*

Accordingly, it is hereby ORDERED that plaintiff's Motion for Summary Judgment (Dkt. No. 20) is DENIED. It is further

ORDERED that defendant's Motion for Summary Judgment (Dkt. No. 24) is GRANTED and the Administrative Law Judge's decision is AFFIRMED.

It is SO ORDERED.

_____/s/_____
Hon. Michael S. Nachmanoff
United States District Judge

January 14, 2022
Alexandria, Virginia